NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 25 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NORMA PATRICIA CORONA MORENO, Petitioner, v. MERRICK B. GARLAND, Attorney General, Respondent. | No. 19-72341 Agency No. A205-052-428 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 14, 2021
San Francisco, California

Before: HAWKINS and MILLER, Circuit Judges, and MORRIS,[**] District Judge.

Norma Corona Moreno, a native and citizen of Mexico, petitions for review

of an order of the Board of Immigration Appeals affirming the denial of her

application for asylum, withholding of removal, and protection under the

Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Brian M. Morris, United States District Judge for the District of Montana, sitting by designation.

§ 1252(a)(1), and we grant the petition and remand for further proceedings.

1. The government argues that Corona Moreno's claims for withholding of removal and protection under the CAT are moot because she has been removed to Mexico. But under ICE Policy Directive 11061.1, the government ordinarily facilitates the return to the United States of aliens who are granted relief by this court or who obtain a remand that eventually results in a grant of relief by the agency. *See Del Cid Marroquin v. Lynch*, 823 F.3d 933, 936 (9th Cir. 2016) (per curiam). Because granting Corona Moreno's petition would "at least increase [her] chances" of returning to the United States, her claims are not moot. *Id.*

2. The Board abused its discretion when it determined that Corona Moreno's conviction for burglary, in violation of California Penal Code § 459, is a particularly serious crime rendering her ineligible for asylum and withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). Although we lack jurisdiction over the ultimate determination of whether a crime is particularly serious, we retain jurisdiction to review whether the Board applied the wrong legal standard or relied on inappropriate factors or improper evidence to reach its conclusion. *Flores-Vega v. Barr*, 932 F.3d 878, 884 (9th Cir. 2019).

Under *Matter of Frentescu*, 18 I. & N. Dec. 244 (B.I.A. 1982), the Board must decide "whether 'the nature of the conviction, the underlying facts and

2

circumstances and the sentence imposed justify the presumption that the convicted immigrant is a danger to the community.'" *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1077 (9th Cir. 2015) (quoting *Delgado v. Holder*, 648 F.3d 1095, 1107 (9th Cir. 2011) (en banc)). The Board erred when it relied on Corona Moreno's sentence of one year of imprisonment without considering that her sentence had been suspended so that she spent only two months in jail. *See Flores-Vega*, 932 F.3d at 885–86.

Contrary to the Board's determination, Corona Moreno's criminal history confirms that her sentence was suspended, and her sworn asylum declaration states that she spent only "about two months" in jail. The Board's oversight may have been outcome-determinative. *See Matter of Frentescu*, 18 I. & N. Dec. at 247 (burglary conviction was not particularly serious where the alien entered an unoccupied dwelling, was unarmed, presented no aggravating circumstances, and received a suspended sentence after spending three months in jail); *see also Alphonsus v. Holder*, 705 F.3d 1031, 1044, 1048 (9th Cir. 2013) (holding that the Board must provide reasons for treating factually identical cases differently). On remand, the Board must consider all reliable information in the record, including the evidence demonstrating that Corona Moreno's sentence was suspended. *See Anaya-Ortiz v. Holder*, 594 F.3d 673, 678 (9th Cir. 2010).

3. Despite assuming the credibility of her testimony, the Board

3

concluded that Corona Moreno "did not establish that it is more likely than not that she will be tortured" if returned to Mexico. To the contrary, the record compels the conclusion that it is more likely than not that Corona Moreno will be tortured by or with the acquiescence of Mexican officials if returned to Mexico. *See Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020); *see also* 8 U.S.C. § 1252(b)(4)(B) (standard of review).

Corona Moreno's husband beat and raped her for years and threatened to kill her if she left him. Corona Moreno filed more than ten reports with both local and federal police, but the police did nothing because her husband was a cartel member and former police officer. Her husband has been released from prison and has contacted her family to ask for her whereabouts. The record compels the conclusion that Corona Moreno's past rape and physical abuse with the acquiescence of police officers constitutes past torture and that she is more likely than not to be subjected to future torture at the hands of her husband. *See Xochihua-Jaimes*, 962 F.3d at 1188.

Corona Moreno also testified that she was waterboarded "about seven times" by Mexican police in retaliation for filing a human rights complaint against police officers and soldiers who threatened to kill her infant son while interrogating and arresting her husband. She was released only after her brother, who had been tortured alongside her, bribed the police by offering to work as an undercover

4

informant. Three months later, her brother and his girlfriend were murdered. Corona Moreno's human-rights complaint was also dismissed, but not until after she personally identified the officers involved in the raid. Corona Moreno's treatment constitutes past torture at the hands of Mexican officials. And the officials and the cartel are more likely than not to target her if she returns, as explained by Dr. Benjamin Smith, whose testimony the immigration judge would have given "full weight" if he had found Corona Moreno credible.

The Board also erred when it determined that Corona Moreno could relocate to avoid future torture because she had previously been able to live in hiding. *See Akosung v. Barr*, 970 F.3d 1095, 1102 (9th Cir. 2020). In any event, Dr. Smith explained that the police and cartels would be able to track Corona Moreno throughout Mexico.

Therefore, if Corona Moreno's account is credible, the record compels her entitlement to protection under the CAT. We remand to the Board to consider the issue of credibility in the first instance and to reevaluate its particularly serious crime determination taking into consideration the suspended nature of Corona Moreno's sentence.

**PETITION GRANTED and REMANDED.**